UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIO, LLC,

    Plaintiff,

v.                                                   CASE NO: 8:13-cv-191-T-26TGW

VALENTINO'S OF AMERICA, INC.,

    Defendant.
_____/

## **O R D E R**

Before the Court is Defendant's Second Motion to Dismiss for Lack of Jurisdiction (Dkt. 25) and Plaintiff's Opposition. (Dkt. 26). After careful consideration of the motion, the applicable law and the file, the Court concludes that personal jurisdiction does not exist over Defendant and the motion should be granted.

### ALLEGATIONS

The amended complaint alleges personal jurisdiction based on either or both (1) specific jurisdiction under section 48.193(1)(a), Florida Statutes, related to Defendant's engaging in a business venture in Florida and (2) general jurisdiction under section 48.193(2), Florida Statutes, related to Defendant's substantial and not isolated activities in Florida. The following paragraphs of the amended complaint are relied on for showing

these two grounds for the establishment of personal jurisdiction over Valentino's of America, Inc. (Valentino's).

> 6.  This Court has personal jurisdiction over Defendant because Defendant has caused a consequence in the State of Florida by threatening litigation against Plaintiff based on one or more of its federally registered trademarks.
> . . . .
> 8.  An actual case or controversy has arisen between the parties by virtue of the following systematic and ongoing activities which, upon information and belief, were conducted by Defendant in the State of Florida during 2012:
>
> a.  Some time prior to May 8, 2012, Defendant began discussions with certain persons who reside in the State of Florida, including Jack Irwin, Dick Keith, Rob Howell and John Bardogna (sometimes hereinafter referred to as the "Florida Residents"), about opening up Florida restaurants franchised by Defendant.
> b.  In anticipation of offering franchising opportunities to one or more of the Florida Residents, on or about May 8, 2012, Defendant filed, as required by law, a "Franchise Exemption Application" under Section 559.802, Florida Statutes, the Sale of Business Opportunities Act.
> c.  On May 17, 2012, the State of Florida Department of Agriculture & Consumer Services notified Defendant that it received Defendant's Exemption Application and assigned to Defendant, under the Business Name, Valentino's of America, Inc., and the DBA Name, Valentino's, Advertisement Identification Number BF49353.  The exemption was effective as of May 8, 2012 and will expire on May 8, 2013.
> d.  On or about July 5th, 2012, Jack Irwin, a resident of Bradenton, Florida, acknowledged receipt from Defendant of a "Franchise Disclosure Document" dated April 30, 2012.
> e.  The Franchise Disclosure Document, countersigned by Irwin, states that "[Defendant] authorizes the respective state agencies identified on Exhibit 1 to receive service of process for it in the particular state."  The state agency being

referred to is the Florida Department of Agricultural & Consumer Services, Division of Consumer Services, P.O. Box 6700, Tallahassee, Florida 32314-6700.

 f. On or about July 5th, 2012, John Bardogna, another of the Florida Residents, acknowledged receipt from Defendant of a second "Franchise Disclosure Document" dated April 30, 2012.

 g. [same allegations as e. as to Bardogna].

 h. The Franchise Disclosure Document delivered to each of Irwin and Bardogna states that "[Defendant] believes that there may be other Valentino's Restaurants operating elsewhere in the United States which may have prior rights in certain defined market areas of which [Defendant] is unaware," and "We do not know of any superior prior rights or infringing uses that could materially affect your use of the Marks in the state in which you anticipate doing business except as stated above."

 I. In addition to presenting the Florida Residents with Franchise Disclosure Documents, Defendant engaged in ongoing discussions with the Florida Residents from approximately April 2012 through at least August 2012, considering restaurant locations in or around Orlando and Fort Myers, discussing management of the possible franchise facilities, reviewing floor plans of locations and exploring the idea of mobile restaurants.

 j. During the time frame referenced to in paragraph 8.i. above and specifically in June and July 2012, Defendants were also in communication with two different Florida real estate brokers, Deno P. Dikeou of Dikeou Reality in Maitland, Florida and Andrea Merkel of Shorecrest Retail Partners of Orlando, Florida.

 k. On or about June 25, 2012, Defendant was advised by one of the Florida Residents that there was a "Valentinos" in Sarasota, eighty miles away from Bradenton, where Jack Irwin lives.

 l. On July 25, 2012, Defendant's counsel sent a cease and desist letter to Plaintiff advising Plaintiff, inter alia, that if it "move[d] forward with its plans to expand into the region, it will demand that you immediately cease all use of the name

> and service mark "Valentino," "Valentino Pizzeria Trattoria,"
> or any name or mark confusingly similar thereto."

(Dkt. 23, paras. 6 & 8 a.-l.).

## BACKGROUND

In contesting personal jurisdiction, Defendant Valentino's submits the declarations of Mary Ann Novak, A. Michael Alesio, and John Bordogna. Ms. Novak is counsel for Valentino's and the attorney who sent the cease and desist letter to Plaintiff. Mr. Alesio is the Executive Vice President of Valentino's. Mr. Bordogna avers he is a Nebraska resident, not a Florida resident, who engaged in conversations with Valentino's and three other individuals to attempt to open a Valentino's franchise in Florida. The Plaintiff, Mio, LLC, relies on numerous exhibits already filed in the court docket and attached to its response.

Valentino's is a Nebraska corporation with its sole corporate office in Lincoln, Nebraska.[1] Valentino's franchises restaurants using the service mark "Valentino's."[2] There are approximately 35 Valentino's restaurants in five different Midwestern states.[3] The first restaurant was opened in Nebraska in 1957.[4] Valentino's is not registered to do

---

[1] See docket 25-2, para. 3.

[2] See docket 25-2, para. 5.

[3] See docket 25-2, para. 6.

[4] See docket 25-2, para. 6.

business in Florida and does not own or hold real or personal property in Florida.[5] It has no business office in Florida or address, post office box or phone number in Florida.[6] As alleged in the amended complaint, Valentino's "does not own, operate, franchise or offer to franchise restaurants in the State of Florida."[7]

In April or May 2012, John Bordogna and three other individuals contacted Valentino's about opening up a franchise in Florida.[8] Jack Irwin, Rob Howell, and Richard Keith all have ties to Nebraska, and according to Mr. Bordogna only Mr. Howell and Mr. Keith are full-time Florida residents.[9] He claims that Mr. Irwin is a Nebraska resident, although he owns property in Florida.[10] Plaintiff, however, attaches to its response a handwritten note received in discovery from the Defendant that states, "Jack Irwin lives in Bradenton, FL—Sarasota (80 miles away) has a Valentino's."[11] It is significant that two and perhaps three individuals interested in starting a franchise were located in Florida because communications with Defendant probably occurred between Nebraska and Florida.

---

[5] See docket 25-2, para. 8.

[6] See docket 25-2, para. 8.

[7] See docket 23, para. 18.

[8] See docket 25-2, para 9.

[9] See docket 25-3, para. 4.

[10] See docket 25-3, para. 4.

[11] See docket 26-1.

Defendant acted immediately upon Mr. Bordogna's inquiry by applying for a franchise exemption in Florida.[12] The application that Defendant mailed to the Florida Department of Agriculture and Consumer Services in early May 2012[13] was accepted, and the exemption under section 559.802, Florida Statutes, was granted on May 17, 2012.[14] The exemption was in effect for one year, from May 8, 2012, through May 8, 2013.

There were obviously several communications between Defendant and Mr. Bordogna's friends in Florida from May 2012 to August or September 2012 regarding opening a Valentino's franchise in Florida. Defendant issued a Franchise Disclosure Document on April 30, 2012,[15] which Mr. Irwin and Mr. Bordogna received. The Franchise Disclosure Document contained an attachment listing state agents for service of process on Defendant.[16] The list of state agencies identified to receive service of process for Defendant includes the Florida Department of Agriculture & Consumer Services in Tallahassee. On July 5, 2012, Mr. Irwin signed a receipt as requested by Defendant, which acknowledges Mr. Irwin's receipt of a Franchise Disclosure Document from

---

[12]   See docket 25-2, para. 10.

[13]   See docket 25-2, Exh. 1.

[14]   See docket 25-2, Exh. 2.

[15]   See docket 20-11.

[16]   See docket 20-11, p. 28 of 33.

Defendant.[17] The record does not reveal whether Mr. Irwin signed the receipt in Florida or Nebraska. On July 5, 2012, Mr. Bordogna signed the same receipt.[18]

In June and July 2012, Defendant was in communication with the four individuals regarding management of the possible franchise facilities, reviewing floor plans of specific locations, and exploring the idea of mobile restaurants.[19] The discussions covered consideration of restaurant locations in Orlando and Ft. Myers, and two different Florida real estate brokers submitted proposals to Defendant. One Florida broker in Maitland presented retail space available for a Valentino's in Orlando. Another Florida broker, Andrea Merkel, submitted detailed information on a commercial site, also in Orlando, for consideration. Mr. Howell, a Florida resident, faxed information to Duane Thomas in Nebraska regarding "Prelim. Pizza space in Tampa" on July 10, 2012.[20] Discussions continued among the four individuals and Defendant until August or September 2012.

As a result of Defendant's negotiations and investigations with the four individuals concerning a potential franchise in Florida, Defendant discovered Plaintiff's restaurant in

---

[17] See docket 20-11, p. 19 of 33.

[18] See docket 20-11, p. 20 of 33.

[19] See docket 20-11, pp. 2-17 of 33.

[20] See docket 20-11, p. 9 of 33.

Sarasota known as Valentino Pizzeria Trattoria.[21]  Consequently, Defendant's counsel sent a cease and desist letter to Plaintiff on July 25, 2012, for trademark infringement, and a follow-up letter two months later.[22]  The failure of Plaintiff to abide by Defendant's wishes precipitated this action for declaratory relief.  Apart from the uncovering of various trademark issues brought about by the studies of potential locations in Florida for a Valentino's franchise, the explorations never resulted in a tentative franchise agreement or memorandum of understanding among the parties.  To date, no Florida franchise exists.

### APPLICABLE LAW

This Court is vested with jurisdiction pursuant to federal question jurisdiction.  See 28 U.S.C. § 1331.  Actions arising under a United States statute relating to trademarks bestow original jurisdiction in the federal district courts.  28 U.S.C. § 1338(a).  If the statute giving rise to jurisdiction is silent as to service of process, then the forum state's long-arm statute is applied to determine personal jurisdiction.  Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F. 2d 829, 855 (11th Cir. 1990) (citing Rule 4(e), Fed.R.Civ.P.).[23]  To determine personal jurisdiction over a non-resident, courts engage in a two-part inquiry.  See Sculptchair, Inc. v. Century Arts, Ltd., 94 F. 3d 623, 626 (11th Cir. 1996); Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989).  First, the

---

[21]   See docket 25-1, Exh. B.

[22]   See docket 25-1, Exh. C.

[23]   See also Jackson-Bear Group, Inc. v. Amirjazil, 2011 WL 1232985, at *2 (M.D. Fla. 2011).

court must ascertain what grounds, if any, enumerated under Florida's long-arm statute would permit the exercise of personal jurisdiction. If the long-arm statute provides a basis for jurisdiction, then the court must further apply a due process analysis and consider whether constitutional minimum contacts between the defendant and the forum state are sufficient to satisfy "traditional notions of fair play and substantial justice." Sculptchair, 94 F. 3d at 626 (citing Robinson v. Giarmarco & Bill, P.C., 74 F. 3d 253, 256 (11th Cir. 1996) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L. Ed. 95 (1945)). Federal courts must construe the long-arm statute in the same manner as the Florida Supreme Court. Robinson, 75 F. 3d at 256 (citing Madara v. Hall, 916 F. 2d 1510, 1514 (11th Cir. 1990)). Florida's long-arm statute provides far-reaching jurisdiction on Florida courts. Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582 (Fla. 2000).

After the plaintiff makes the *prima facie* case for personal jurisdiction through the allegations of the complaint, then the defendant may contest jurisdiction with the use of affidavits, documents, or other evidence. If a defendant challenges jurisdiction through affidavits, as in this case, the burden shifts to the plaintiff to prove jurisdiction. Sculptchair, 94 F. 2d at 627 (quoting Jet Charter Serv., Inc. v. Koeck, 907 F. 2d 1110, 1112 (11th Cir. 1990)). If any discrepancies in the evidence exist, all reasonable inferences must be drawn in favor of the plaintiff. Cable/Home Commc'n, 902 F. 2d at 855.

## ANALYSIS

Defendant argues that neither general nor specific jurisdiction[24] under Florida's long-arm statute have been satisfied. The Court agrees. General jurisdiction does not exist over Defendant because Defendant is not "engaged in substantial and not isolated activity" in Florida as defined by cases interpreting section 48.193(2) of the Florida Statutes.[25] While general jurisdiction does not require connexity between the defendant's activities in Florida and the cause of action,[26] it requires a more demanding showing of "continuous and systematic" general business contacts than specific jurisdiction under section 48.193(1). See Consolidated Dev. Corp. v. Sherritt, Inc., 216 F. 3d 1286, 1292 (11th Cir. 2002); Vos, B.V. v. Payen, 15 So.3d 734, 736 (Fla.Dist.Ct.App. 2009).

*General Long-arm Jurisdiction*

---

[24] See Goodyear Dunlop Tires Operations, S.A. v. Brown, — U.S. —, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011) (noting the distinction between "specific" and "general" jurisdiction).

[25] Section 48.193(2) provides as follows:
> A defendant who is engaged in substantial and not isolated activity within the state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

[26] See Canale v. Rubin, 20 So.2d 463, 466 (Fla.Dist.Ct.App. 2009) (citing Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 2002) and holding that specific jurisdiction requires a showing of connexity or a causal connection between the defendant's contacts with the state and the cause of action).

Defendant never consummated a sale of its franchise in Florida. Defendant did not market its restaurant franchise in Florida. It was a Nebraska resident, Mr. Bordogna, who initially expressed interest in the possibilities of opening a franchise in Florida. Defendant has operated restaurants in the Midwest since 1957. Defendant does not have an office or hold any real estate in Florida. It has not sent any representative to Florida to scout for possible locations. Although the discussions surrounding this one request to open a franchise in Florida did entail the services of at least two real estate brokers, the leg work appears to have been performed by the four friends, two of which are unequivocally Florida residents.[27] Although Franchise Disclosure Documents were sent to at least two of the individuals to sign, no franchise agreement was ever reached with any individuals or entities.

The one step that Defendant undeniably took was the submission of the Franchise Exemption Application in May 2012 to Florida's Department of Agriculture & Consumer Services. The Florida Sale of Business Opportunity Act, sections 559.80-.815, Florida Statutes (FSBOA), imposes requirements on companies desiring to sell a business opportunity in Florida. By filing an application for an exemption pursuant to section 559.802, a franchisor may exempt itself from the obligations of the Act, so long as it

---

[27] It is undisputed that Mr. Bordogna is a Nebraska resident. It is disputed whether Mr. Irwin is a Florida resident. In any event, the record is unclear as to which, if any, communications were sent from Florida to Nebraska. Mr. Bordogna avers that he was always in Nebraska when he communicated with Defendant.

seeks exemption before an offer for sale or sale of the franchise in Florida. Defendant would not have sold the franchise without incurring time-consuming and extensive disclosures pursuant to the FSBOA, had it not been granted an exemption. Although no authority has been located that addresses the effect of a defendant's act of applying for an exemption for the purposes of personal jurisdiction under the long-arm statute, the Court finds that this act would not satisfy the "substantial and not isolated" aspect of the statute.

To even entertain the inquiry regarding a franchise in Florida, Defendant was required to seek an exemption pursuant to Florida law. The exemption lasts only one year in duration. One of the four individuals stumbled on the already-existing "Valentino's" and Defendant commenced enforcing its trademark. In doing so, Defendant sent the cease and desist letter to Plaintiff.[28] This lawsuit is the direct result of the sending of the cease and desist letter to Plaintiff, and an unintended consequence of third parties searching for a suitable location in Florida to potentially open a franchise. No franchise was ever established in Florida as a result of the search, and according to this record,

---

[28] Defendant's sending a cease and desist letter to Plaintiff in Florida concerning trademark infringement does not constitute doing business in Florida for purposes of section 48.193(1)(a). See Virgin Health Corp. v. Virgin Enter. Ltd., 393 F. App'x 623, at *2 (11th Cir. 2010) (unpublished opinion) (citing Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000), which holds that the mailing of two cease and desist letters threatening a patent infringement case is insufficient to be transacting business in the state under section 48.193(1)(a) or (2)). See also RC3, Inc. v. Bieber, 2012 WL 4207457, at * 5 (M.D. Fla. 2012).

Defendant no longer holds an exemption in Florida and does not seek to establish franchises in Florida.

A designated state agent to accept service of process listed in Defendant's Franchise Disclosure Document, standing alone, does not meet the general jurisdiction requirement either. See Consolidated Dev. Corp. v. Sherritt, Inc., 216 F. 3d 1286, 1293 (11th Cir. 2000) (noting that providing for service of process through corporation's appointment of agent in connection with offering of bonds, which was not related to the litigation, did not subject corporation to personal jurisdiction, analogizing to appointment of registered agent); In re Farmland Indus., Inc., 2007 WL 7694308, at *12 (M.D. Fla. 2007) (holding that single contact of registering to do business in Florida and appointing a registered agent for service of process does not subject foreign corporation to general personal jurisdiction). Designating an agent for service of process in a franchise disclosure notice for suits related to the anticipated franchise agreement does not constitute the continuous general business contacts necessary to support general *in personam* jurisdiction. Such a one time filing for an exemption in conjunction with the potential sale of one franchise, without more, does not bestow general personal jurisdiction on the foreign corporation.

*Specific Long-arm Jurisdiction*

To fall within the specific jurisdiction enunciated in the long-arm statute, the allegations of the complaint coupled with the ensuing submissions must show that this

action for declaratory judgment "arises from" the particular contact alleged on the part of the defendant. See Oldfield v. Pueblo De Bahia Lora, S.A., 558 F. 3d 1210, 1221 n. 27 (11th Cir. 2009) (defining specific jurisdiction as "jurisdiction over causes of action arising from or related to a defendant's actions within the forum.").[29] In this case, Plaintiff relies on section 48.193(1)(a)[30] and argues that the activities of the Defendant show a "general course of business activity in the State for pecuniary benefit," citing Sculptchair.[31]

Trademark infringement asserted against Plaintiff, however, did not arise out of the quest undertaken by the four individuals to find a location for a Valentino's franchise in Florida. First, the infringement is directed at Plaintiff, who was not a part of, nor had

---

[29] See also Bieber, 2012 WL 4207457, at * 3 (stating that specific jurisdiction requires that cause of action must arise from or be directly related to the defendant's contacts).

[30] Section 48.193(1)(a) provides as follows:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . .to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

[31] See Sculptchair, 94 F. 3d at 627 (quoting Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So.2d 561, 564 (Fla. 1975)). See also Insight Instruments, Inc. v. A.V.I.-Advanced Visual Instruments, Inc., 44 F. Supp. 2d 1259, 1271-72 (M.D. Fla. 1999).

any knowledge of, the plans of the four individuals to start a Valentino's franchise. While the infringement claim involving Plaintiff, and another infringement claim against another restaurant owner in Florida, were discovered by virtue of the hunt for a viable location for a Valentino's franchise, this claim does not "arise from," as that term is interpreted, the pursuit of a franchise. The potential infringement claim against Plaintiff has nothing to do with the four individuals' relationship to Defendant in the pre-start-up phase of a franchise. The four individuals are not charged with infringement. The absence of any franchise relationship coming to fruition in Florida further confirms that Defendant was not involved in a general course of activity for pecuniary benefit in Florida.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Dkt. 25) is **GRANTED**. The clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, on July 3, 2013.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record